No. 3748

Second Circuit

---

## WILKERSON v. FAGGARD

---

(March 24, 1930.   Opinion and Decree.)
(June 2, 1930.   Rehearing Refused.)

---

H. W. Bethard, Jr., of Coushatta, and Rusca & Cunningham, of Natchitoches, attorneys for plaintiff, appellee.

Lee & Williams, of Mansfield, attorneys for defendant, appellant.

DREW, J.   Plaintiff, the mother-in-law of J. Solomon, together with Mrs. Louise Solomon, the wife of J. Solomon, and his two minor children, were on their way from their home, in Natchitoches, La., to Shreveport, La., in a Ford touring car, making the journey over what is known as the Louisiana Purchase Highway. A negro employee of J. Solomon, by the name of Martin Abram, was doing the driving, and all other occupants of the car were on the back seat. When the Solomon car was some four or five miles north of Harmon, the defendant, A. G. Faggard, on his way to Shreveport, in a Ford coupe, attempted to pass the Solomon car, and at that time saw approaching, from the opposite direction, a large car, traveling at a rapid rate

of speed, and, in order to avoid a collision with the car coming from the opposite direction, defendant cut his car to the right side of the road. In crossing over to the right side of the road the rear right wheel hub cap of the Faggard car collided with the left front wheel hub cap of the Solomon car, and as a result thereof the Solomon car left the road and turned over in a ditch on the right side of the road. All the occupants of the Solomon car received injuries, and in this suit plaintiff, Mrs. Laura Wilkerson, asks for damages against the defendant, Faggard, in the amount of $2,000. The lower court rendered judgment in her favor for the sum of $500, and defendant took this appeal. Plaintiff has answered the appeal, praying that the judgment of the lower court be amended by increasing the amount of the judgment to the amount prayed for in her original petition.

The defendant claims that the accident was not caused by the collision, but when the driver of the Solomon car applied the brakes to the car after the accident, thereby causing the car to slide over in the ditch, and that, if the accident was not caused by the too sudden application of the brakes, the driver of the Solomon car was negligent in not pulling to the right to let defendant's car pass, and in speeding up his car when he saw defendant's car trying to pass.

It is admitted in the pleadings that the road at the point of the accident was not wide enough for three cars to pass each other at the same time.

There were no eyewitnesses to the accident other than the occupants of the Solomon car and the defendant and his companion at the time, Mr. Calhoun, and, as usual in such cases, there is a wide difference in the testimony of the occupants of the different cars. There is no claim made by defendant, and the proof is conclusive that defendant did not blow his horn or give any signal whatsoever before attempting to pass the Solomon car. The evidence of the occupants of the Solomon car is that they were driving very slow, not over fifteen miles an hour, and it is explained that the reason for driving slow was in order to permit the little Solomon girl to finish eating some sardines; they testify that she was eating at the time and that their car was on the extreme right-hand side of the road; that they saw the car approaching from the opposite direction, and were watching it, due to the great speed it was making, and did not see defendant's car or know that it was attempting to pass them until it struck the front wheel of their car; and that almost immediately thereafter they were turned over in the ditch.

Defendant and his companion in the car at the time, testify that they saw the Solomon car a half mile before they overtook it, and speeded up to pass it, when the negro driver of the Solomon car looked at them and speeded up his car also; that the two cars ran along, side by side, for nearly two hundred yards, and were forced to cut over to the right side of the road to avoid a collision with the large car coming from the opposite direction with great speed; that they did not know they had struck the Solomon car until after they had passed it and gone nearly two hundred yards down the road, when Mr. Calhoun looked back and saw the car in the ditch: that they saw the large oncoming car for a quarter or half mile before it passed them. Defendant testified that when his car collided with the Solomon car he was going as fast as a Ford car will travel,

trying to get by before the large car reached that point to pass. Defendant complains that the driver of the Solomon car did not pull over to the right when he attempted to pass, and that when the accident occurred the left wheels of the Solomon car were near the center of the road.

A road so narrow that only two cars can pass each other on it at the same time does not leave much space for either car to pull to its right, and the inside wheels of either car would necessarily have to be near the center of the road in order for the outside wheels to stay on the road at all. However, the testimony of all the occupants of the Solomon car is that they did not know defendant was trying to pass; that he did not give any signal of any kind; and that they did not know he was on the road until the second he struck their car.

When defendant came back to the overturned car, after the accident, he made the remark that he thought only negroes were in the car, and both he and Mr. Calhoun testified that, although they ran side by side with the Solomon car for two hundred yards on a narrow road, they saw no one in the car but the negro driver. The Solomon car was an open touring car, and the positive testimony of the occupants of that car is that there were no curtains up at the time of the accident. Defendant and his companion, in attempting to explain why they did not see the other occupants of the car, say they think there were curtains up, but are not positive of the fact. The positive testimony is bound to prevail.

Where the testimony of witnesses is so wide apart, as that on the point of driving side by side for two hundred yards, the reasonableness of the testimony will have to be considered, and it is unreasonable to believe that defendant could have driven by the side of the Solomon car for two hundred yards without seeing the occupants of the back seat in an open touring car with no curtains to hide them; which leads to the conclusion that defendant is mistaken about racing with the Solomon car and adds color to the testimony of the plaintiff's witnesses that they did not see defendant's car until just about the time it collided with their car.

Defendant gave no signal of his desire to pass, and does not contend that the driver of the Solomon car knew he was attempting to pass until he had run abreast of the Solomon car. The fastest that any witness, even defendant himself, says the Solomon car was traveling at that time, is twenty or twenty-five miles an hour. The defendant must have been running much faster to have overtaken plaintiff's car, and it is inconceivable that the Solomon car had such a quick pick-up as to jump into the same speed as defendant's car was making in an instant; if not, defendant's car would have gone by, as contended by plaintiff, had defendant not cut to the right too quickly on seeing the approaching car.

Defendant urges section 16 of Act No. 296, of 1928 in support of his defense. However, the facts of the case do not justify its application. The law reads:

"The driver of a vehicle upon a highway about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right in favor of the overtaking vehicle on suitable and audible signal being given by the driver of the overtaking vehicle, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

The remaining defense is that the accident was not caused by the collision, but

was brought about by the too sudden application of the brakes to plaintiff's car after the collision, and testimony was offered to show that the negro driver of the Solomon car made some such statement a short time after the accident, together with the testimony of witnesses who went to the scene of the accident an hour or so after it happened, who testified from what they thought to be the tracks of the Solomon car. All of this testimony is that the Solomon car wobbled a little and then straightened itself out and went down the road about one hundred and fifty feet before it went into the ditch. A number of cars stopped and turned in the road before the occupants of plaintiff's car were removed, and Mrs. Solomon says there were thirty or forty cars that stopped to see about them—all of which would make such testimony very uncertain, unless there was some peculiarity about the tracks of the Solomon car, which is not shown. However, if it be true that the Solomon car traveled a hundred and fifty feet after the collision, it would have been only a space of time amounting to a few seconds, and not unreasonable. The driver of the Solomon car testified that he was thrown aloose from the steering wheel by the impact, and that by the time he straightened himself the car was going in the ditch. He denies putting on the brakes, but, if he had done so, it would not have been an unreasonable thing to do under the circumstances.

This case is before us almost entirely on facts. The judge of the lower court heard and saw the witnesses testify and knew them personally and was far better qualified than we to judge of their credibility. He found in favor of the plaintiff, and we see no error in his judgment as to defendant's liability.

Plaintiff is an old lady, a widow without any means of support. The testimony shows that her neck and back were wrenched, and that there were bruises and lacerations on her face and hands and promiscuously over her body and legs, and that she was confined to her bed for two months. She also had two ribs broken and internal injuries which caused hemorrhages from the kidneys for several days after the accident. She was severely shocked and suffered to such an extent that she was not rational for twenty-four hours. Before the accident she did the washing and cooking and housekeeping for the Solomon family and was able to perform any kind of manual labor. Since the accident and up until the time of the trial, several months thereafter, she was not physically able to perform any of the duties she had ordinarily performed. At the time of the trial she was still suffering and not able to lift a bucket of water and had difficulty in getting up and down in a chair. Dr. Reed testified that she sustained an injury to her back and hip from which she will never recuperate.

The lower court found for plaintiff in the sum of $500, which amount, we think, is inadequate, and we also think a judgment for $1,000 is not too much for the injuries she received.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended, by increasing the amount of the judgment in favor of the plaintiff, Mrs. Laura Wilkerson, and against the defendant, A. G. Faggard, from $500 to $1,000, and that, as thus amended, the judgment is affirmed. Defendant and appellant to pay the cost of the appeal.